**MUSICK, PEELER & GARRETT LLP**
333 South Hope Street, Suite 2900
Los Angeles, California 90071-3048
Telephone (213) 629-7600
Facsimile (213) 624-1376

Michael F. Klein (State Bar No. 166011)
*m.klein@musickpeeler.com*
Daniel J. Taylor (State Bar No. 241404)
*d.taylor@musickpeeler.com*

Attorneys for PAUL HUYGENS, as Trustee for the TB 42 Trust dated 11/13/2023; and PETER KRAVITZ, as Trustee for the Kravitz Asset Protection Trust

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PAUL HUYGENS, as Trustee for the TB 42 Trust dated 11/13/2023; and PETER KRAVITZ, as Trustee for the Kravitz Asset Protection Trust,

Plaintiffs,

v.

WESTWOOD WEALTH MANAGEMENT, a California Corporation; WESTWOOD ALPHA OPPORTUNITY FUND, LP, a Delaware Limited Partnership; MICHAEL PURYEAR, an individual; CRAIG ROWEN, an individual, and LPL FINANCIAL LLC, a Delaware Limited Liability Company,

Defendants.

Case No. 2:26−cv−03241 SB (AJRx)

Assigned to Hon. Stanley Blumenfeld, Jr.

**PLAINTIFFS' OPPOSITION TO DEFENDANT ROWEN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: September 11, 2026

Time: 8:30 a.m.

Courtroom: 6C

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 6

II. MATERIAL ALLEGATIONS AGAINST ROWEN ..... 7

A. Rowen Misrepresented the Westwood Alpha Opportunity Fund ..... 7

B. Rowen Concealed the Fund's Risk ..... 8

C. By the Time Plaintiffs Learned the Truth, It Was Too Late ..... 9

III. LEGAL STANDARD ..... 10

IV. ARGUMENT ..... 10

A. Plaintiffs Adequately Plead Their Rule 10b-5 Claim Against Rowen ..... 10

1. The Elements of a Rule 10b-5 Claim ..... 10

2. The FAC Alleges Material Misrepresentations as to Rowen. ..... 10

(a) Rowen's Misrepresentations Are Material, Not Puffery ..... 10

(b) The FAC Adequately Pleads False Statements by Rowen. ..... 13

3. The FAC Adequately Pleads Scienter as to Rowen. ..... 14

4. Disclaimer Language Cannot Defeat Reliance at this Stage. ..... 17

5. Rowen Qualifies as a Control Person under Section 20(a). ..... 18

B. The Fraudulent Concealment Claim Survives. ..... 20

1. The Elements of a Fraudulent Concealment Claim ..... 20

2. Rowen Had a Duty to Disclose at Least the 2023 Audit ..... 20

C. The Fiduciary Duty Claim Against Rowen Is Adequately Pled ..... 23

V. CONCLUSION ..... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261 (C.D. Cal. 2007) .......... 20

*Bank of the West v. Valley National Bank of Arizona*, 41 F.3d 471 (9th Cir. 1994) .......... 18

*Blake v. Canoo Inc.*, 807 F. Supp. 3d 1061 (C.D. Cal. 2025) .......... 18, 20

*Dias v. Nationwide Life Ins. Co.*, 700 F. Supp. 2d 1204 (E.D. Cal. 2010) .......... 18

*Est. of Eller v. Bartron*, 31 A.3d 895 (Del. 2011) .......... 23

*Gelfman v. Weeden Inv'rs, L.P.*, 792 A.2d 977 (Del. Ch. 2001) .......... 21, 22, 23

*Genesis 1 Oil Servs. LLC v. Wismann Grp., LLC*, 2021 WL 4027375 (C.D. Cal. May 27, 2021) .......... 21

*Glazer Capital Mgt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747 (9th Cir. 2023) .......... *passim*

*Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) .......... 19

*Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190 (N.D. Cal. 2012) .......... 16

*In re Lehman Bros. Sec. & Erisa Litig.*, 799 F. Supp. 2d 258 (S.D.N.Y. 2011) .......... 12

*In re Silicon Graphics Inc. Securities Litig.*, 183 F.3d 970 (9th Cir. 1999), *as amended* (Aug. 4, 1999) .......... 16

*In re Trade Desk, Inc. Securities Litig.*, 824 F. Supp. 3d 1056 (C.D. Cal. 2026) .......... 15

*In re Vivendi, S.A. Securities Litig.*,
838 F.3d 223 (2d Cir. 2016) .......... 13

*In re Washington Mut., Inc. Securities, Derivative & ERISA Litig.*,
694 F. Supp. 2d 1192 (W.D. Wash. 2009) .......... 11

*In re Worlds of Wonder Securities Litig.*,
35 F.3d 1407 (9th Cir. 1994) .......... 18

*Leo Invs. Hong Kong Ltd. v. Tomales Bay Cap. Anduril III, L.P.*,
342 A.3d 1166 (Del. Ch. 2025) .......... 23

*LiMandri v. Judkins*,
60 Cal. Rptr. 2d 539 (Cal. App. 4th Dist. 1997) .......... 21

*Ludvik Electric Co. v. Vanderlande Industries, Inc.*,
2023 WL 8789379 (D. Utah Dec. 19, 2023) .......... 18

*Mulligan v. Impax Laboratories, Inc.*,
36 F. Supp. 3d 942 (N.D. Cal. 2014) .......... 12

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) .......... 13

*Rosenberg Bros. & Co. v. Arnold*,
283 F.2d 406 (9th Cir. 1960) .......... 10

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
119 F. Supp. 3d 1213 (C.D. Cal. 2015) .......... 17

*SEB Inv. Mgt. AB v. Align Tech., Inc.*,
485 F. Supp. 3d 1113 (N.D. Cal. 2020) .......... 14

*Sec. & Exch. Comm'n v. Murphy*,
50 F.4th 832 (9th Cir. 2022) .......... 11

*SEC v. Todd*,
642 F.3d 1207 (9th Cir. 2011) .......... 20

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) .......... 14, 15

*Terstate Restoration, LLC v. Seaman*,
2014 WL 12569347 (C.D. Cal. July 9, 2014) .......... 22

*Typenex Co-Inv., LLC v. Solar Wind Energy Tower, Inc.*,
123 F. Supp. 3d 1017 (N.D. Ill. 2015)............................................................18

**Statutes**

15 U.S.C. § 78u-4(b)(1)(B).......................................................................15

17 C.F.R. § 240.10b-5.............................................................................7, 10, 18

Fed. R. Civ. P. 8(d)(2)..........................................................................19, 23

Fed. R. Civ. P. 9(b)...................................................................................10

Fed. R. Civ. P. 12(b)(6)..........................................................................7, 10

Securities Exchange Act of 1934 Section 20(a)...................................18, 19

# I. INTRODUCTION

Plaintiffs Paul Huygens, as Trustee for the TB 42 Trust dated 11/13/2023 ("Huygens"), and Peter Kravitz, as Trustee for the Kravitz Asset Protection Trust ("Kravitz") (collectively, "Plaintiffs"), oppose the motion to dismiss by Defendant Craig Rowen ("Rowen").

The FAC plausibly alleges that Rowen helped solicit Plaintiffs into the Fund through materially misleading risk-management representations and later helped conceal the information that would have revealed the truth before Plaintiffs' capital was lost. Plaintiffs do not rely on Rowen's title alone. They allege he was a WW partner and officer, a Principal of the Fund, part of the Fund's management team, and one of the controlling officers and managers responsible for the Fund's assets and management. Rowen also transmitted and approved marketing materials describing the Fund as risk-managed, liquidity-conscious, and designed to mitigate downside risk and pursue absolute returns. Those representations were misleading because Defendants had already adopted—or intended to adopt—an undisclosed options strategy with approximately $30 million in notional exposure against only $5.4 million in capital, exposing the Fund to losses exceeding its entire capital base.

The FAC also alleges that Rowen's involvement continued after Plaintiffs invested. Defendants received the Fund's 2023 annual audited financial statement ("2023 Audit"), but Rowen did not provide it to Plaintiffs until nearly twenty months later. When Rowen finally produced the 2023 Audit and Q4 2024 summary, the documents revealed the Fund's extreme options exposure and resulting collapse. By then, the Fund had fallen from approximately $13.6 million to approximately $576,000 in four months, and Plaintiffs' capital had been almost entirely wiped out before they could meaningfully exercise their redemption rights. These allegations support the reasonable inference that Rowen knew, or was deliberately reckless in not knowing, that the risk-management representations were misleading and that withholding the 2023 Audit kept Plaintiffs from discovering the Fund's true

condition in time to act.

Rowen's motion asks the Court to do what Fed. R. Civ. P. 12(b)(6) does not permit: credit Rowen's factual narrative, minimize his alleged role, reinterpret disputed offering materials in his favor, and resolve contested issues of falsity, materiality, scienter, reliance, control, concealment, and fiduciary duty without discovery. The FAC's allegations must instead be accepted as true and assessed as a whole. So viewed, the FAC states claims against Rowen under Rule 10b-5, for fraudulent concealment, and for breach of fiduciary duty. At minimum, Rowen's arguments raise factual disputes that cannot be resolved on a motion to dismiss.

For these reasons, the motion should be denied in its entirety or, at minimum, Plaintiffs should be granted leave to amend.

## II. MATERIAL ALLEGATIONS AGAINST ROWEN

### A. Rowen Misrepresented the Westwood Alpha Opportunity Fund

The FAC alleges that Rowen was a partner and officer of WW and a Principal of the Fund. FAC ¶¶ 11, 34, 122, 131. He was one of WW's controlling officers and managers and helped manage and control the Fund. FAC ¶¶ 1, 100, 122. In 2023, before Plaintiffs' investment in the Fund, Rowen sent Plaintiffs the Fund's marketing materials, including the Westwood Alpha Opportunity Fund Presentation ("Pitch Deck"). FAC ¶ 28. Plaintiffs further allege that Rowen approved, created, or was personally involved in creating the marketing materials used to solicit Plaintiffs. FAC ¶¶ 28-29. Those marketing materials made the following representations about the Fund's strategy (the "Statements"):

1) The Fund "aims to mitigate downside risk";

2) The "portfolio allows for efficient monitoring of risk exposure";

3) It has the "liquidity bias … we need to manage positions … while effectively managing risk"; and

4) It is an "absolute return fund," which Plaintiffs allege means the Fund would seek more stable growth over long periods instead of quick gains. FAC ¶¶ 28, 98.

Separately, Defendant WW presented Plaintiffs with the Fund's Offering Memorandum ("OM"), which represented that the Fund would seek "risk-adjusted returns" and "hedge risk." FAC ¶¶ 30-31.

Plaintiffs allege those representations were false because, by December 31, 2023, the Fund had already engaged in, or intended to engage in, a massively risky options strategy. FAC ¶¶ 54-55, 62-63. Plaintiffs allege they would not have invested had they known the Fund's true risk profile. FAC ¶¶ 35, 88-89.

The FAC alleges Rowen knew, or was reckless in not knowing, that these representations were false because he was an officer of WW and Principal of the Fund, helped manage and control the Fund, and allegedly knew of the Fund's high-risk strategy while he used contrary representations to induce Plaintiffs' investment. FAC ¶¶ 1, 34, 82-84, 122, 131.

Plaintiffs relied on the Pitch Deck, the OM, and Defendants' related representations in agreeing to invest $1 million each in the Fund. FAC ¶¶ 35, 88-89. The FAC also alleges that Rowen and the other Defendants leveraged Puryear's trusted adviser relationship to induce Plaintiffs to invest in the outside, high-risk venture. FAC ¶¶ 25-28, 127.

### B. <u>Rowen Concealed the Fund's Risk</u>

The LPA required WW to "furnish to each Partner" the annual audited financials "as soon as is reasonably practicable after the close of each Fiscal Year." FAC ¶ 36. It also allowed Plaintiffs the right to withdraw up to 25% of their capital each quarter with 90 days' written notice. FAC ¶ 37. Plaintiffs "relied on Defendants… to provide timely financial statements" so they could "make informed decisions regarding their right of redemption." FAC ¶ 37. Plaintiffs allege that, if they had learned of the Fund's extreme leverage through timely disclosure, they

would have immediately exercised their contractual redemption rights to mitigate their exposure and redeem their contributions from the Fund. FAC ¶¶ 62-63.

The FAC alleges that on February 10, 2024, Huygens requested the Fund's financial statements. FAC ¶ 39. Two days later, the 2023 Audit was finalized and delivered to WW, Puryear, Rowen, and the Fund. FAC ¶ 40. Rowen did not provide the 2023 Audit to Plaintiffs when received and instead knowingly and intentionally withheld it. FAC ¶¶ 41, 49, 53, 60.

While Defendants withheld the 2023 Audit, Plaintiffs received Q1 and Q2 2024 unaudited summaries showing the value of their investments, but not disclosing how the Fund was investing its capital. FAC ¶¶ 42-43. After Q2 2024, Defendants failed to provide the Q3 and Q4 2024 statements, or the 2023 Audit. FAC ¶ 50. Plaintiffs repeatedly requested financial information during this time but received nothing. FAC ¶¶ 44-48.

### C. <u>By the Time Plaintiffs Learned the Truth, It Was Too Late</u>

On September 29, 2025, Plaintiffs' counsel sent a formal demand to WW and the Fund requesting audited financial statements and invoking Plaintiffs' redemption rights. FAC ¶ 51. On October 1, 2025, Rowen finally provided the 2023 Audit and Q4 2024 quarterly summary. FAC ¶ 52. Rowen also stated that the 2024 audit would be sent once completed. FAC ¶ 52.

Those documents revealed the Fund's extreme options exposure, which Plaintiffs had not previously seen. FAC ¶¶ 54-58. Plaintiffs allege the Fund declined approximately 96% between June 30, 2024 and October 31, 2024, from approximately $13.6 million to approximately $576,000. FAC ¶ 57. Huygens's capital account fell from $1,454,218 at the end of Q2 2024 to $18,992.76 at the end of Q4 2024, and Kravitz suffered similar losses. FAC ¶ 58.

Plaintiffs allege Defendants withheld the 2023 Audit and other financial information to hide the Fund's strategy and losses and prevent Plaintiffs from redeeming before the Fund collapsed. FAC ¶¶ 59-63, 91-92, 112-114. Plaintiffs

further allege that, had they timely received the 2023 Audit and discovered the Fund's extreme leverage, they would have immediately exercised their redemption rights to mitigate their exposure and redeem their contributions. FAC ¶¶ 62-63.

## III. LEGAL STANDARD

Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Glazer Capital Mgt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 763 (9th Cir. 2023) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff cannot rely on "labels and conclusions" or "naked assertions." *Id.* But the court must view the allegations "in the light most favorable to Plaintiffs." *Id.* Rule 9(b) requires fraud claims to "state with particularity the circumstances constituting fraud." If the Court dismisses any claim, it should grant leave to amend unless amendment would be futile. *See Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960) (requiring "extreme liberality" in favor of amendments).

## IV. ARGUMENT

### A. Plaintiffs Adequately Plead Their Rule 10b-5 Claim Against Rowen

#### 1. The Elements of a Rule 10b-5 Claim

A securities-fraud claim under Section 10(b) and Rule 10b-5 requires: "(1) a material misrepresentation or omission by the defendant [('falsity')]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Glazer*, 63 F.4th at 764. Rowen does not contest the third, fifth, or sixth elements, so Plaintiffs address falsity, scienter, and reliance.

#### 2. The FAC Alleges Material Misrepresentations as to Rowen.

##### (a) Rowen's Misrepresentations Are Material, Not Puffery

A statement is material "if under all the circumstances, [it] would have

assumed actual significance in the deliberations of a reasonable investor," though it "need not change the investor's plan." *Sec. & Exch. Comm'n v. Murphy*, 50 F.4th 832, 846–47 (9th Cir. 2022) (citation omitted). The FAC alleges that Rowen made material misrepresentations in the Pitch Deck that the Fund would: (1) "aim[] to mitigate downside risk"; (2) allow for "monitoring of risk exposure"; (3) maintain a "liquidity bias . . . while effectively managing risk"; and (4) operate as an "absolute return fund." FAC ¶¶ 28, 78-81, 98. The FAC separately alleges that the OM represented the Fund would seek "risk-adjusted returns" and "hedge risk." FAC ¶ 31.

Statements about a fund's risk profile and investment approach would matter to a reasonable investor, and the FAC alleges that these statements were material to Plaintiffs. FAC ¶¶ 78-80. Courts have held that risk-management statements are material when a defendant allegedly takes undisclosed risky actions that contradict prior representations. *In re Washington Mut., Inc. Securities, Derivative & ERISA Litig.*, 694 F. Supp. 2d 1192, 1208–09 (W.D. Wash. 2009). There, the court held that allegations about a bank's risk-management standards were sufficient where the plaintiff also alleged that the bank had weakened those standards.

Here, Plaintiffs allege that Rowen said the Fund would "mitigate downside risk" while using "a massively risky options strategy, with a notional value of approximately $30 million against only $5.4 million in capital," which "exposed the Fund to losses in excess of its entire capital base." FAC ¶¶ 33, 54-55, 79. Rowen's representations were material because they concerned why the Fund allegedly failed: its undisclosed, extremely risky investments. Under *Washington Mutual*, Rowen's representation that the Fund would allow "monitoring of risk exposure" was likewise material because the FAC alleges that Rowen failed to monitor or adjust for that risk even though he helped "manage and control the Fund." FAC ¶¶ 1, 28, 78, 122, 131.

Rowen argues that the Statements are puffery because they are "not capable

of objective verification, and lack[] a standard against which a reasonable investor could expect them to be pegged." *Mulligan v. Impax Laboratories, Inc.*, 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014) (citation omitted). But "there is a difference between enthusiastic statements amounting to general puffery and opinion-based statements that are anchored in misrepresentations of existing facts." *Id.* (citation omitted). That determination "entail[s] fact-intensive assessments that are more properly left to the jury." *Id.* (citation omitted). A court also may not assess challenged statements "in a vacuum, plucking the statements out of their context . . . but rather will examine the entire statement and its circumstances to determine if it is actionable." *Id.* (citation omitted). At the pleading stage, statements should not be deemed puffery unless they are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their unimportance." *Id.* at 966-67 (citation omitted).

The alleged Statements are factual representations about the Fund's actual strategy. Taken together, they misled Plaintiffs about the Fund's risk profile. That risk profile was not immaterial puffery; it was a core fact on which reasonable investors would base investment decisions. Rowen also argues that "liquidity bias" and "absolute return fund" are expressions of future intent or opinion. But "opinion-based statements that are anchored in misrepresentations of existing facts" are not puffery. *Mulligan*, 36 F. Supp. 3d at 966 (citation omitted). Opinion statements are also actionable if Plaintiffs allege that Rowen did not believe them. *In re Lehman Bros. Sec. & Erisa Litig.*, 799 F. Supp. 2d 258, 289 (S.D.N.Y. 2011). Plaintiffs do so here: the FAC alleges that Rowen failed to disclose a high-risk options strategy exposing the Fund to losses exceeding its entire capital base. FAC ¶¶ 33, 54-55, 79. Those allegations show that Rowen knew the Fund's strategy and knowingly made false representations about it while concealing the truth.

Rowen also ignores the aggregate effect of the representations. The FAC alleges that Rowen used them to distinguish the Fund from highly leveraged,

speculative trading and to induce Plaintiffs to invest, even though the Fund allegedly was highly speculative. *See In re Vivendi, S.A. Securities Litig.*, 838 F.3d 223, 250 (2d Cir. 2016) (finding defendant could not "escape liability for securities fraud" by making many slightly false representations "all collectively aimed at perpetuating a broader, material lie").

Thus, Plaintiffs allege that Rowen's Statements were concrete representations about the Fund's investment methodology. They are not generic statements of corporate optimism that Rowen can dismiss as "puffery"; they describe how the Fund would be managed, and Plaintiffs allege those descriptions were false.

**(b) The FAC Adequately Pleads False Statements by Rowen.**

Next, a plaintiff must plead "why or how" each statement is false. *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). A plaintiff satisfies the particularity requirement for falsity if the pleaded facts support a reasonable inference that the statements are false. *Glazer*, 63 F.4th at 766 (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 315-18 (2007)). Plaintiffs have met that standard. The FAC alleges that Rowen represented that the Fund would "mitigate downside risk" and "hedge risk" when he and the Fund had already deployed "a massively risky options strategy, with a notional value of approximately $30 million against only $5.4 million in capital," which "exposed the Fund to losses in excess of its entire capital base." FAC ¶¶ 33-34, 54-55, 79, 83.

Rowen argues that the Pitch Deck disclosed that the Fund could trade options. But Plaintiffs do not allege that Rowen concealed the mere possibility of options trading. They allege that Rowen misrepresented the type and magnitude of options strategy the Fund would use. The FAC alleges that the Fund's strategy was "extreme," "massively risky," and "exceptionally risky" because its options exposure reflected a 5.5-to-1 ratio and "exposed the Fund to losses in excess of its entire capital base." FAC ¶¶ 33, 54-55, 63, 82, 92. Rowen's withholding of the 2023

Audit, which disclosed that strategy, supports the inference that he understood reasonable investors would view the undisclosed strategy as material.

Rowen next argues that there is nothing inherently contradictory about hedging risk, maintaining a liquidity bias, and engaging in high-risk options trading. That argument asks the Court to adopt Rowen's preferred interpretation of disputed statements rather than Plaintiffs' pleaded interpretation. But courts cannot resolve "disputes about the actual meaning of the statement" on a motion to dismiss because they "must construe the pleadings in the light most favorable to the nonmoving party." *SEB Inv. Mgt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1132 (N.D. Cal. 2020) (citation omitted).

Finally, Rowen argues that the FAC does not allege that the Fund failed to maintain a "liquidity bias" or manage investment risks. But the FAC alleges that the Fund's entire asset base was exposed, making the strategy inconsistent with a liquidity bias. It also alleges that Rowen and the Fund did not hedge or safeguard against losses, but instead exposed the Fund to losses exceeding its entire capital base. FAC ¶¶ 31, 33-34, 54-57, 79, 83-84.

The FAC pleads why each Statement was false. The Court should not resolve factual disputes over the meaning of those terms at the pleading stage.

### 3. <u>The FAC Adequately Pleads Scienter as to Rowen.</u>

Scienter is an "intent to mislead investors or deliberate recklessness to an obvious danger of misleading investors." *Glazer*, 63 F.4th at 765 (quotation omitted). Deliberate recklessness requires "an *extreme* departure from the standards of ordinary care . . . which presents a danger of misleading buyers . . . that is either known to the defendant or is so *obvious* that the actor must have been aware of it." *Id.* (quotation omitted; emphasis in original). A plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (quotation omitted). A "strong inference" means it is "*at least as likely as* any plausible opposing inference." *Tellabs*, 551 U.S. at 328

(emphasis in original). It "need not be irrefutable . . . or even the most plausible of competing inferences[.]" *Id.* at 324 (quotation omitted). The Court must take a "holistic review" of the combined allegations. *Glazer*, 63 F.4th at 766 (citation omitted). Rowen prevails "only if a reasonable person could not draw an inference of scienter from the pleaded facts." *In re Trade Desk, Inc. Securities Litig.*, 824 F. Supp. 3d 1056, 1076 (C.D. Cal. 2026) (citation omitted).

Here, Plaintiffs' allegations support an inference "at least as likely as any plausible inference" that Rowen intended to mislead Plaintiffs or, at minimum, knew of the obvious danger of doing so and proceeded anyway.

As one of the Fund's "controlling officers and managers," Rowen "knew of the Fund's high-risk strategy while simultaneously making contrary representations to induce Plaintiffs' investment." FAC ¶¶ 34, 122. While Rowen "solicited Plaintiffs with promises of a low-risk strategy," the Fund "had already engaged in, or intended to engage in, a massively risky options strategy." FAC ¶¶ 33, 83. As a controlling officer and manager, Rowen had authority over the Fund's assets and management. FAC ¶ 122. And Plaintiffs allege that Rowen and the other Defendants leveraged Puryear's position of trust as Plaintiffs' adviser to induce Plaintiffs' investment. FAC ¶ 127. Taken together, these allegations support a strong inference that Rowen knew—or was deliberately reckless in not knowing—that the risk-management representations were misleading. FAC ¶¶ 78-80, 82, 84.

Rowen argues that Plaintiffs' scienter allegations rest on information-and-belief pleading and therefore must state "with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). But Plaintiffs plead specific facts supporting scienter, including Rowen's alleged role as a controlling officer and manager, his transmission and approval of the marketing materials, his knowledge of the Fund's high-risk strategy, and his later withholding of the 2023 Audit. FAC ¶¶ 28-29, 34, 40-41, 52-54, 82-84, 122, 131. Plaintiffs allege more than Rowen's title; they allege he exercised control over the Fund's assets and management. FAC

¶ 122.

The FAC also supports scienter through Rowen's concealment of the 2023 Audit. Plaintiffs requested financial statements in February 2024, and Puryear promised to provide the audited statements when he received them. FAC ¶¶ 36-41. Two days later, the 2023 Audit was delivered to WW, Puryear, Rowen, and the Fund, but Rowen did not send it to Plaintiffs for nearly twenty months even though WW was contractually required to provide it. FAC ¶¶ 36-41, 52-54, 60, 82. During that period, Plaintiffs received limited quarterly summaries that did not disclose the Fund's strategy, and Puryear gave false explanations for the delay. FAC ¶¶ 42-49, 52-53. When Plaintiffs finally received the 2023 Audit from Rowen, it revealed "for the first time" the Fund's extreme options strategy, which contradicted Rowen's representations. FAC ¶¶ 52, 54. Rowen's alleged role in withholding a document that revealed the undisclosed strategy supports a strong inference of scienter. *See Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1202 (N.D. Cal. 2012) (finding investors' allegations that defendant delayed providing documents that would have revealed his misrepresentations sufficient to support scienter).

Rowen responds that Plaintiffs' allegation that he "knowingly and intentionally concealed the 2023 Audit" is an insufficient information-and-belief allegation. But Plaintiffs plead the facts supporting that inference: the 2023 Audit was delivered to Rowen in February 2024; Plaintiffs repeatedly requested financial information from WW; Defendants withheld the 2023 Audit while providing other limited summaries; and Rowen ultimately produced it only after Plaintiffs' formal demand. FAC ¶¶ 40-53, 60, 111. This supports a reasonable inference that Rowen could have sent it the entire time but deliberately did not.

Rowen also argues that Plaintiffs rely on hindsight because some allegations postdate the challenged representations. But later conduct may be probative of scienter where, as here, Plaintiffs allege that Rowen withheld a document revealing facts inconsistent with his earlier representations. *See In re Silicon Graphics Inc.*

*Securities Litig.*, 183 F.3d 970, 988 (9th Cir. 1999), *as amended* (Aug. 4, 1999). Rowen's alleged failure to provide the 2023 Audit for nearly twenty months, even while WW provided other financial information, supports the inference that he knew the Audit would reveal the Fund's undisclosed strategy.

Finally, Rowen argues that Plaintiffs do not allege motive. But motive is not required; the question is whether Plaintiffs plead facts supporting an intent to deceive or deliberate recklessness. *Glazer*, 63 F.4th at 765. In any event, Plaintiffs allege that Rowen was a WW partner and Fund Principal, that WW and the Fund benefited from Plaintiffs' investment, and that Defendants concealed the Fund's strategy and financial condition to prevent Plaintiffs from redeeming their assets. FAC ¶¶ 1, 11, 27, 34, 59-61, 65-70, 131. Those allegations are sufficient at this stage.

The FAC therefore pleads a strong inference of scienter. Rowen has not shown that any competing inference is more plausible, particularly given the allegations that he concealed the Fund's strategy and withheld the 2023 Audit for nearly twenty months.

#### 4. **<u>Disclaimer Language Cannot Defeat Reliance at this Stage.</u>**

Plaintiffs allege that they relied on Rowen's written and oral representations about the Fund's specific strategy. FAC ¶¶ 35, 88-89. That reliance was reasonable because Plaintiffs allege that Rowen and the other Defendants leveraged Puryear's position of trust as Plaintiffs' adviser to induce Plaintiffs' investment in the outside, high-risk venture. FAC ¶ 127. Rowen also was a partner of WW, which Plaintiffs had trusted with their investments for years. FAC ¶¶ 11, 25-26.

Rowen seeks dismissal based on factual disputes and disclaimers in materials outside the FAC. But his cases are distinguishable. Plaintiffs' reliance is based on written representations, not solely oral statements as in *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1249 (C.D. Cal. 2015). This case concerns statements about the Fund's current strategy, not only forward-looking

representations accompanied by adequate cautionary language as in *In re Worlds of Wonder Securities Litig.*, 35 F.3d 1407, 1413 (9th Cir. 1994). And this case is at the pleading stage, unlike *Bank of the West v. Valley National Bank of Arizona*, 41 F.3d 471, 477 (9th Cir. 1994), which followed trial.

In any event, general disclaimers do not immunize intentional fraud. *Ludvik Electric Co. v. Vanderlande Industries, Inc.*, 2023 WL 8789379, at *14 (D. Utah Dec. 19, 2023) ("a non-reliance provision may not insulate [a party] from liability for its own fraud"). And "except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." *Dias v. Nationwide Life Ins. Co.*, 700 F. Supp. 2d 1204, 1216 (E.D. Cal. 2010); *Typenex Co-Inv., LLC v. Solar Wind Energy Tower, Inc.*, 123 F. Supp. 3d 1017, 1028 (N.D. Ill. 2015) (holding that it was "not clear that the law always gives effect to a no-reliance clause, at least without further factual inquiry that cannot be undertaken at this stage of the litigation"). The Court should not convert disclosure language outside the FAC into a complete defense at the pleading stage, particularly where Plaintiffs allege intentional fraud.

### 5. **Rowen Qualifies as a Control Person under Section 20(a).**

Additionally, Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) ("Section 20(a)"), "imposes joint and several liability on persons in control of any person liable under any provision of the securities law." *Blake v. Canoo Inc.*, 807 F. Supp. 3d 1061, 1085 n.15 (C.D. Cal. 2025). A Section 20(a) claim requires "(1) a primary violation of federal securities law and (2) that the defendant exercised actual power or control over the primary violator." *Id.* Plaintiffs have alleged primary Rule 10b-5 violations by Rowen, WW, and Puryear. Rowen does not independently address WW's or Puryear's primary violations, instead relying on the other Defendants' motion. Plaintiffs address those arguments in their opposition to that other motion.

As to control, the FAC alleges that Rowen had actual power or control over

WW and the Fund. Rowen was a partner and officer of WW, the Fund's General Partner, and a "Principal of the Fund." FAC ¶¶ 11, 34, 131. The FAC further alleges that, as a controlling officer and manager of WW, Rowen "exercised direct control over the Fund's assets and management." FAC ¶ 122. It also alleges that Rowen helped "manage and control the Fund." FAC ¶ 1. Rowen argues that Plaintiffs' allegations show only Puryear controlled WW. But Plaintiffs may plead alternative or inconsistent allegations at this stage. *See* Fed. R. Civ. P. 8(d)(2).

Rowen next argues that only "the maker of a statement is the person or entity with ultimate authority over the statement" and that someone "who prepares" a statement for another is not its maker. *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142, 146-48 (2011) (rejecting liability even for those "significantly involved in preparing" misleading statements). But Rowen did not merely assist in drafting a statement attributed to another; the FAC alleges that he sent Plaintiffs the Pitch Deck and approved, created, or was personally involved in creating the marketing materials used to solicit Plaintiffs, and that Plaintiffs relied on those representations in deciding to invest. FAC ¶¶ 28-29, 35, 88-89. For purposes of this motion, those allegations must be accepted as true; Rowen made the Statements, he did not merely help prepare them.

The FAC also repeatedly alleges that Rowen, not just Puryear, made misrepresentations. It alleges that "Defendants Puryear, Rowen, and WW" solicited Plaintiffs to participate in the Fund by "representing through multiple documents" that the Fund was risk-managed, would hedge risk, would mitigate downside risk, and would operate as an absolute-return fund with an experienced team. FAC ¶ 1. It further alleges that Rowen sent Plaintiffs the Pitch Deck, knew of the high-risk strategy while contrary representations were being used to induce Plaintiffs' investment, and that Plaintiffs relied on Rowen's representations about the Fund. FAC ¶¶ 28, 33-35, 78-89. Thus, Rowen made statements to Plaintiffs and is subject to Section 20(a) liability.

Finally, Rowen argues that the FAC does not allege he "managed the company on a day-to-day basis and was involved in the formulation of financial statements," which he says is required to show control. *SEC v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011) (quotation omitted). But *Todd* addressed summary judgment, not pleading. *Id.* And the FAC alleges more than Rowen's title. It alleges that Rowen exercised direct control over the Fund's assets and management, helped manage and control the Fund, sent and allegedly approved the marketing materials, received the 2023 Audit, and later produced the 2023 Audit and Q4 2024 quarterly summary on behalf of WW and the Fund. FAC ¶¶ 1, 28-29, 40, 52-53, 122. These allegations are sufficient to plead actual power or control at this stage.

Ultimately, whether Rowen exercised actual power or control "is normally an intensely factual question." *Blake*, 807 F. Supp. 3d at 1085 n.15. At a minimum, discovery is needed to determine Rowen's authority over WW, the Fund, the marketing materials, the 2023 Audit, and the financial information withheld from Plaintiffs.

**B. <u>The Fraudulent Concealment Claim Survives.</u>**

**1. <u>The Elements of a Fraudulent Concealment Claim</u>**

To plead fraudulent concealment, a plaintiff must allege "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007). Rowen challenges only the first element—whether he had a duty to disclose. The FAC adequately alleges that duty.

**2. <u>Rowen Had a Duty to Disclose at Least the 2023 Audit</u>**

A duty to disclose may arise in four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant

makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Cal. App. 4th Dist. 1997).

Plaintiffs allege that it was Rowen who ultimately disclosed the 2023 Audit to Plaintiffs. FAC ¶ 52. At the pleading stage, that allegation supports the inference that Rowen could have provided the 2023 Audit earlier but chose not to do so. FAC ¶ 111. Plaintiffs cannot know before discovery precisely who at WW was responsible for providing annual audited financial statements. But Rowen's eventual production of the 2023 Audit on behalf of WW and the Fund supports the reasonable inference that he had access to the Audit and responsibility, authority, or ability to disclose it. At minimum, discovery is needed on Rowen's role in withholding and later producing the 2023 Audit.

Rowen also had a fiduciary or confidential relationship with Plaintiffs. *See Genesis 1 Oil Servs. LLC v. Wismann Grp., LLC*, 2021 WL 4027375, at *6 (C.D. Cal. May 27, 2021). Under Delaware law, "directors of corporate general partners . . . owe fiduciary duties to limited partners" when their conduct causes the corporate general partner to breach a fiduciary or substitute contractual duty owed to the limited partners. *Gelfman v. Weeden Inv'rs, L.P.*, 792 A.2d 977, 992 n.24 (Del. Ch. 2001) (denying motion to dismiss breach of fiduciary duty claim against individual officers of general partner where plaintiff alleged the officers' actions came at the expense of other limited partners and breached a contractual duty of loyalty).

Here, the FAC alleges that Rowen was a partner and officer of WW, the General Partner, and a "Principal of the Fund" who helped "manage and control the Fund" and WW. FAC ¶¶ 1, 11, 122. It also alleges that Rowen's conduct caused WW to breach contractual duties owed to Plaintiffs. The LPA required WW to provide Plaintiffs with annual audited financial statements "as soon as is reasonably practicable" after year-end. FAC ¶ 36. The 2023 Audit was delivered to WW, Puryear, Rowen, and the Fund on February 12, 2024, but Plaintiffs allege it was withheld for more than a year despite their repeated requests. FAC ¶¶ 40, 44-45, 49-

50, 53, 107, 135. And "on behalf of WW and the Fund," Rowen eventually provided the 2023 Audit to Plaintiffs in October 2025. FAC ¶¶ 52, 111. Thus, the FAC alleges that Rowen owed Plaintiffs fiduciary duties because his conduct caused WW to breach a "contractual duty to the limited partners." *Gelfman*, 792 A.2d at 992 n.24; FAC ¶ 107. Rowen does not dispute that the 2023 Audit was provided late in violation of the LPA. Nor did he move to dismiss the fiduciary-duty claim against WW, which necessarily rests on the existence of duties concerning these same issues.

For "exclusive knowledge," a "duty to disclose arises when two elements are present: (1) the material fact is known to (or accessible only to) the defendant; and (2) the defendant knows the plaintiff is unaware of the fact and cannot reasonably discover the undisclosed fact." *Terstate Restoration, LLC v. Seaman*, 2014 WL 12569347, at *7 (C.D. Cal. July 9, 2014) (quoting *San Diego Hospice v. County of San Diego*, 31 Cal. App. 4th 1048, 1055 (1995)). Here, the FAC alleges that Rowen knew of the 2023 Audit because it was delivered to him, along with WW, Puryear, and the Fund, two days after Plaintiffs first requested financial statements. FAC ¶¶ 39-40. The FAC further alleges that the 2023 Audit disclosed the Fund's extreme options strategy to Plaintiffs for the first time, including approximately $30 million in options on only $5.4 million in capital. FAC ¶¶ 54-55, 62-63. It also alleges that Plaintiffs repeatedly requested financial information, did not receive the 2023 Audit until Rowen produced it on October 1, 2025, and could not discover the Fund's true condition in time to exercise their redemption rights without that disclosure. FAC ¶¶ 44-53, 59-63, 111-114. These allegations support a duty to disclose based on exclusive knowledge.

Finally, the FAC alleges a duty to disclose based on active concealment. It alleges that Rowen had access to the 2023 Audit, that Defendants withheld it despite repeated requests, and that Rowen eventually produced it nearly twenty months after it was completed. FAC ¶¶ 40, 44-54, 107, 111, 135. Rowen argues the FAC does not

allege any "statement denying that he had the audit, no misdirection, and no false explanation for the delay." Dkt. 36 at 24-25. But Rowen cites no authority holding that a defendant may avoid concealment liability simply by remaining silent while withholding a material document he had access to and later produced. These allegations, accepted as true, sufficiently plead a duty to disclose the 2023 Audit.

### C. The Fiduciary Duty Claim Against Rowen Is Adequately Pled

A breach of fiduciary duty requires that "the defendant owed [plaintiff] a fiduciary duty and that the defendant breached it." *Est. of Eller v. Bartron*, 31 A.3d 895, 897 (Del. 2011). The "human controller of the general partner" owes limited partners at least a duty of loyalty. *Leo Invs. Hong Kong Ltd. v. Tomales Bay Cap. Anduril III, L.P.*, 342 A.3d 1166, 1196 (Del. Ch. 2025). Here, the FAC alleges that Rowen was a partner and officer of WW, the General Partner, and a "Principal of the Fund" who helped "manage and control the Fund" and WW. FAC ¶¶ 1, 11, 122. Those allegations are sufficient at the pleading stage to allege that Rowen owed Plaintiffs a duty of loyalty. Rowen argues that the FAC alleges Puryear exercised exclusive control over WW through alter ego allegations. But Plaintiffs may plead alternative or inconsistent theories at this stage. *See* Fed. R. Civ. P. 8(d)(2).

As explained above, officers of corporate general partners may "owe fiduciary duties to limited partners" when their "conduct causes the corporate general partner to breach a modified fiduciary or substitute contractual duty to the limited partners." *Gelfman*, 792 A.2d at 992 n.24. The FAC alleges that Rowen did exactly that: he had access to the 2023 Audit, Defendants withheld it despite repeated requests, and Rowen later produced it on behalf of WW and the Fund after Plaintiffs' formal demand. FAC ¶¶ 40, 44-54, 107, 111, 135. Those allegations plausibly allege that Rowen participated in conduct causing WW to breach duties owed to Plaintiffs. The fiduciary-duty claim against Rowen should therefore survive.

## V. CONCLUSION

Plaintiffs respectfully request that the Court deny Rowen's motion to dismiss. If the Court grants any part of the motion, Plaintiffs request leave to amend the FAC within seven days to address any deficiencies identified by the Court.

DATED: August 21, 2026

MUSICK, PEELER & GARRETT LLP

By: [signature]

Daniel J. Taylor
Attorneys for PAUL HUYGENS, as Trustee for the TB 42 Trust dated 11/13/2023; and PETER KRAVITZ, as Trustee for the Kravitz Asset Protection Trust

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Plaintiffs certifies that this brief contains 5,960 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 21, 2026

MUSICK, PEELER & GARRETT LLP

By: [signature]
Daniel J. Taylor
Attorneys for PAUL HUYGENS, as Trustee for the TB 42 Trust dated 11/13/2023; and PETER KRAVITZ, as Trustee for the Kravitz Asset Protection Trust